```
1                    UNITED STATES DISTRICT COURT
                             FOR THE
2                       DISTRICT OF VERMONT

3


4    United States of America      )
                                   )
5                                  )
     v.                            ) Case No. 5:22-cr-18-2
6                                  )
                                   )
7    Jesse Sweet                   )
                                   )
8    _____)

9


10   RE:  Change of Plea Hearing

11   DATE:  February 17, 2023

12   LOCATION:  Burlington, Vermont

13   BEFORE:  Honorable Geoffrey W. Crawford
                 Chief District Judge

14

15   APPEARANCES:

16   Michael P. Drescher, AUSA
     United States Attorney's Office
17   District of Vermont
     PO Box 570
18   Burlington, VT 05402-0570

19


20   Steven L. Barth, AFPD
     Office of the Federal Public Defender
21   District of Vermont
     95 Pine Street, Suite 150
22   Burlington, VT 05401

23


24        TRANSCRIBED BY:  Sunnie Elizabeth Donath, RMR
                 United States District Court Reporter
25                     verbatim@vermontel.net

26
```

1                    (The Court opened at 11:33 a.m.)

2                    COURTROOM DEPUTY:  Your Honor, this is Case Number

3     22-cr-18, Defendant Number 2, United States of America versus

4     Jesse Sweet.  Present on behalf of the government is Assistant

5     US Attorney Michael Drescher.  Present with the defendant is

6     Assistant Federal Public Defender Steven Barth.  We are here

7     for a change of plea hearing.

8                    THE COURT:  Good morning.  Good to see you.

9                    ATTORNEY DRESCHER:  Good morning, Your Honor.

10                   ATTORNEY BARTH:  Good morning.

11                   THE DEFENDANT:  Good morning.

12                   THE COURT:  All right.  Mr. Sweet, before I can

13    accept your plea to the three charges that are proposed today,

14    I need to ask you a series of questions.  I do this to make

15    certain that your rights are protected and that your plea is

16    voluntary.  What we say is recorded, so I know you'll answer

17    aloud, "yes" or "no" or whatever the right answer is.  If you

18    don't understand what I'm asking you or something else that you

19    hear, please speak up.  It's my job to take time to explain

20    your rights fully.  It's important that you understand my

21    questions and everything else that you hear being said by

22    anyone in the courtroom.

23         If, at any time, you wish to speak privately with

24    Mr. Barth, just say so, and we'll take a break and let the two

25    of you speak in a private setting.  Do you understand what I've

1    said so far?

2              THE DEFENDANT:  Yes, Your Honor.

3              THE COURT:  At this time, I'll ask that you be placed

4    under oath.  Do you have in mind that, if you were to make a

5    statement today which is untrue, that it could be used against

6    you in a separate prosecution for perjury or for making a false

7    statement?

8              THE DEFENDANT:  Yes, Your Honor.

9                   JESSE SWEET,

10             having been duly sworn to tell the truth,

11                testifies as follows:

12             THE COURT:  Could you state your full name, please?

13             THE DEFENDANT:  Jesse Sweet.

14             THE COURT:  And, Mr. Sweet, what is your age?

15             THE DEFENDANT:  27.

16             THE COURT:  And how far have you gone in school?

17             THE DEFENDANT:  I have a high school diploma.

18             THE COURT:  And, since high school, what has been

19   your principal type of employment?

20             THE DEFENDANT:  Not really much.  I've had jobs on

21   and off.  I just, I don't know.

22             THE COURT:  In construction or --

23             THE DEFENDANT:  I like automotive.  That's my big

24   thing.

25             THE COURT:  Okay, fair enough.  And is English your

1    first language?

2              THE DEFENDANT:  It is, Your Honor.

3              THE COURT:  And are you a US citizen?

4              THE DEFENDANT:  I am, Your Honor.

5              THE COURT:  Are you currently under the care of a

6    doctor or a psychiatrist or psychologist, anybody like that?

7              THE DEFENDANT:  No, sir.

8              THE COURT:  Have you recently been hospitalized or

9    treated for drug addiction?

10             THE DEFENDANT:  No, sir.

11             THE COURT:  Have you taken any drugs or medicine or

12   pills or consumed alcohol within the last 24 hours?

13             THE DEFENDANT:  No, sir.

14             THE COURT:  Do you feel yourself that you have a

15   clear understanding of this change of plea proceeding?

16             THE DEFENDANT:  Yes, sir.

17             THE COURT:  Does counsel for the government or the

18   defense have any doubt as to Mr. Sweet's competence to enter a

19   valid plea?

20             ATTORNEY DRESCHER:  No.

21             ATTORNEY BARTH:  No, Your Honor.

22             THE COURT:  Appreciate it.  I've received a copy of

23   the plea agreement, and I have a few questions about that

24   process.  First, are you fully satisfied with the counsel,

25   representation, and advice given to you in this case by your

1  attorney, Steve Barth?

2          THE DEFENDANT:  I am, Your Honor.

3          THE COURT:  And did you have a chance to read and

4  discuss the plea agreement with him before you signed it?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  Were you able to speak in a private-type

7  setting where nobody could overhear you and you could ask him

8  any questions that you had on your mind?

9          THE DEFENDANT:  Yes, sir.

10          THE COURT:  And was he able to answer all of your

11  questions?

12          THE DEFENDANT:  He was.

13          THE COURT:  And then, at the end of that discussion,

14  did you, yourself, sign the plea agreement?

15          THE DEFENDANT:  I did, Your Honor.

16          THE COURT:  Does the plea agreement represent the

17  complete understanding you have with the government?

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  Is there any additional agreement with

20  the government which isn't written down in the plea agreement?

21          THE DEFENDANT:  No, sir.

22          THE COURT:  Do you understand the terms of the plea

23  agreement?

24          THE DEFENDANT:  I do.

25          THE COURT:  Let me make sure I do and that we

1    understand them the same way.  It's an open plea in the sense

2    that it sets no limit for, on the length of any sentence other

3    than it not be longer than the amount allowed by law.  It

4    provides for guilty pleas to Counts One, Four, and Five of the

5    indictment, which we'll talk about in a moment.  Okay.

6         I'm reminded there is also, in addition to the plea

7    agreement, there is an exhibit.

8              ATTORNEY BARTH:  Are you addressing counsel, Your

9    Honor?

10             THE COURT:  Yeah, yeah.  Thank you.

11             ATTORNEY BARTH:  Yes.

12             ATTORNEY DRESCHER:  Yes.

13             THE COURT:  Yeah, thank you.  I should have asked you

14   directly, Mr. Barth.  All right.  And, Mr. Sweet, when I asked

15   you about the, whether the plea agreement represented the

16   complete understanding you have with the government, I'd ask

17   the same question again.

18        Does the plea agreement, including its exhibit, represent

19   the complete understanding you have with the prosecution?

20             THE DEFENDANT:  Yes, Your Honor.

21             THE COURT:  All right.  And do you understand what

22   I'm talking about?

23             THE DEFENDANT:  I do.

24             THE COURT:  Good.  All right.  So back to the plea

25   agreement.  Thank you very much.

1          ATTORNEY BARTH:  Your Honor, if I may.

2          THE COURT:  Yes.

3          ATTORNEY BARTH:  There are no other agreements, but

4    the parties have an understanding about the law.  The way the

5    plea agreement is written, Mr. Sweet is pleading guilty to, not

6    just the robbery, but two 922(g) offenses.

7          THE COURT:  Yes.

8          ATTORNEY BARTH:  I've raised the issue with the

9    government that, because the two 922(g) offenses concern the

10   same firearm on the same date, they're multiplicitous.  They're

11   a single unit of prosecution as the courts have interpreted

12   Congress's intent.

13         THE COURT:  Right.

14         ATTORNEY BARTH:  As such, we talked about

15   interlineating and having Mr. Sweet only plead to one of the

16   922(g) counts, but, ultimately, what we decided and what is

17   acceptable under case law is to, at sentencing, the two 922(g)

18   counts would merge and be treated as a single offense such that

19   the maximum penalty for the two counts would only be the ten

20   years as if he had only pleaded guilty to a single count.

21         THE COURT:  Got it.  Does that work for the

22   government?

23         ATTORNEY DRESCHER:  It does, Your Honor, and, in

24   addition to further reflect that, the two counts could and

25   probably should have been charged as one.  The government will

1     agree at sentencing to treat as having been remitted one of
2     the, the special assessment as to one of the 922 counts.
3                 THE COURT:  Right.
4                 ATTORNEY DRESCHER:  So, rather than $300 of special
5     assessment, $200 would satisfy the government's, would be
6     satisfactory to the government.
7                 THE COURT:  Okay.
8                 ATTORNEY DRESCHER:  I, Mr. Barth and I have talked
9     about this at some length, and I think we're all on the same
10    page in this regard.
11                THE COURT:  Okay.  Thank you for bringing it up.
12                ATTORNEY BARTH:  You're welcome.
13                THE COURT:  Do you understand that issue, Mr. Sweet?
14                THE DEFENDANT:  I do, Your Honor.
15                THE COURT:  Okay.  So, with that understanding in
16    view and the exhibit and the plea agreement, is that the
17    complete set of agreements that you have with the prosecution?
18                THE DEFENDANT:  Yes, Your Honor.
19                THE COURT:  All right.  The plea agreement itself is
20    an open plea.  It contains no limit on the length of any
21    sentence other than that the sentence not exceed the length
22    allowed by law.  That's modified a bit, as the attorneys have
23    explained, by their agreement that the two firearms counts will
24    count only as one.  So it would be a single maximum potential
25    sentence for those two counts.

1          THE DEFENDANT:  That's right.

2          THE COURT:  And the government makes certain promises

3    to you at Paragraph 11.  These are not to prosecute you in the

4    District of Vermont for other criminal offenses known as of the

5    date of signing the plea agreement committed in the District of

6    Vermont, which means the state of Vermont, regarding unlawful

7    gun possession and drug distribution; to recommend further that

8    you receive at least two points' credit for acceptance of

9    responsibility and potentially a third point depending on where

10   the offense level is computed.

11       Are those the salient features of the plea agreement from

12   the government's perspective?

13          ATTORNEY DRESCHER:  Yes.

14          THE COURT:  Mr. Barth?

15          ATTORNEY BARTH:  Yes, Your Honor.

16          THE COURT:  Is that how you understand it, Mr. Sweet?

17          THE DEFENDANT:  Yes, Your Honor.

18          THE COURT:  All right.  I understand it the same way,

19   and, and I'll move on to a couple of other questions about the

20   plea process.  Has anyone made a promise or an assurance to you

21   that's not contained in the plea agreement to persuade you to

22   accept it?

23          THE DEFENDANT:  No, Your Honor.

24          THE COURT:  Has anyone made a threat against you to

25   persuade you to accept it?

1                THE DEFENDANT:  No, Your Honor.

2                THE COURT:  And do you understand that the terms of

3      the plea agreement contain no limits on the length of any

4      sentence other than, of course, that it not exceed the length

5      allowed by law?

6                THE DEFENDANT:  Yes, Your Honor.

7                THE COURT:  Mr. Barth, were all formal plea offers

8      from the government conveyed to Mr. Sweet?

9                ATTORNEY BARTH:  Yes, Your Honor.

10               THE COURT:  Do you understand, Mr. Sweet, that the

11     offenses to which you're pleading guilty are felonies; that, if

12     your plea is accepted, you'll be convicted of these felonies

13     and that those convictions may deprive you of important civil

14     rights in the future?  Many of them depend on the law of the

15     state in which you live, but these can include the right to

16     vote, the right to hold public office, the right to serve on a

17     jury, and certainly the right to possess any kind of firearm.

18               THE DEFENDANT:  Yes, Your Honor.

19               THE COURT:  And do you understand that the maximum

20     possible penalty provided by law for Count One, the robbery

21     Hobbs Act charge, is up to 20 years of imprisonment, up to 3

22     years of supervised release, and up to a $250,000 fine, and, as

23     to Counts Four and Five modified by the agreement, that the,

24     the maximum sentence will be computed on the basis of a

25     combined count, up to 10 years of imprisonment, up to 3 years

1    of supervised release, and up to a $250,000 fine and that you

2    would also be ordered to pay a $200 special assessment?  Do you

3    understand those are the maximum potential penalties for these

4    three charges?

5              THE DEFENDANT:  I do, Your Honor.

6              THE COURT:  I need to tell you that your sentence

7    will be determined by the application of sentencing guidelines,

8    possible authorized departures from those guidelines, and other

9    statutory sentencing factors under federal law.  Have you and

10   Mr. Barth talked about how these guidelines might apply to your

11   case?

12             THE DEFENDANT:  We have, Your Honor.

13             THE COURT:  Do you understand that the judge can't

14   determine the advisory guideline range for your case until

15   after a presentence report has been completed and after you and

16   the government have both had an opportunity to challenge the

17   facts and the application of the guidelines recommended by the

18   probation office?

19             THE DEFENDANT:  Yes, Your Honor.

20             THE COURT:  Do you understand the sentence ultimately

21   imposed may be different from any estimate your attorney or

22   anyone else may have given you?

23             THE DEFENDANT:  Yes, Your Honor.

24             THE COURT:  Do you understand that the court has the

25   authority in some circumstances to depart upwards or downwards

1   from the guideline range and will also examine other statutory

2   sentencing factors under the law that may result in the

3   imposition of a sentence that's either greater or lesser than

4   the guideline sentence?

5           THE DEFENDANT:  Yes, Your Honor.

6           THE COURT:  Do you understand that parole has been

7   abolished in the federal system and that, if you're sentenced

8   to prison, you'll not be released partway through your term on

9   parole as frequently happens in state systems such as Vermont?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  Do you understand that, under some

12  circumstances, you or the government may have the right to

13  appeal any sentence that I impose?

14          THE DEFENDANT:  Yes, Your Honor.

15          THE COURT:  I'm going to change subjects and talk to

16  you about your trial rights.  These are constitutional rights

17  that protect a person at the time of his trial.  You have these

18  rights now, but, if you plead guilty this morning, you give up

19  your trial, and, in effect, you give up your trial protection

20  rights at the same time.  That's why we talk about these rights

21  before you plead guilty.  Do you follow what I'm trying to say?

22          THE DEFENDANT:  Yes, Your Honor.

23          THE COURT:  Do you understand that you have every

24  right to plead not guilty to any of the offenses charged

25  against you and to take the case to a trial?

1          THE DEFENDANT:  I do, Your Honor.

2          THE COURT:  Do you understand you'd then have the

3     right to a trial in front of a jury?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  Do you understand that all jurors would

6     have to agree unanimously that you were guilty before you could

7     be convicted?

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  Do you understand that you'd have the

10    right to take part in choosing jury members from members of the

11    larger community?

12         THE DEFENDANT:  Yes, Your Honor.

13         THE COURT:  Do you understand at trial you'd be

14    presumed to be innocent, the government would have to prove you

15    guilty beyond a reasonable doubt in order to obtain a

16    conviction?

17         THE DEFENDANT:  Yes, Your Honor.

18         THE COURT:  Do you understand you'd have the right to

19    the assistance of counsel for your defense, appointed by the

20    court if necessary, at trial and at every other stage of the

21    case?

22         THE DEFENDANT:  Yes, Your Honor.

23         THE COURT:  Do you understand you'd have the right to

24    see and hear all the witness and have them cross-examined in

25    your defense?

```
 1                    THE DEFENDANT:  Yes, Your Honor.
 2                    THE COURT:  Do you understand you'd have the right to
 3     decline to testify, unless you voluntarily chose to testify in
 4     your own case?
 5                    THE DEFENDANT:  Yes, Your Honor.
 6                    THE COURT:  Do you understand you would have that
 7     right to testify and to put on your own evidence at a trial?
 8                    THE DEFENDANT:  Yes, Your Honor.
 9                    THE COURT:  Do you understand you'd have the right to
10     compel witnesses to come to court to testify in your defense?
11                    THE DEFENDANT:  Yes, Your Honor.
12                    THE COURT:  In other words, do you understand that at
13     a trial you could put on your own testimony, your own
14     witnesses, and your own evidence?
15                    THE DEFENDANT:  Yes, Your Honor.
16                    THE COURT:  And do you understand that, if a witness
17     didn't wish to come, the court could order him or her to come
18     and testify anyway?
19                    THE DEFENDANT:  Yes, Your Honor.
20                    THE COURT:  Do you understand that, if you decided
21     not to testify or not to put on any evidence of your own, that
22     that fact could not be used against you at trial?
23                    THE DEFENDANT:  Yes, Your Honor.
24                    THE COURT:  And do you understand that nobody could
25     force you to testify, because you have a privilege against
```

1     incriminating yourself?

2               THE DEFENDANT:  Yes, Your Honor.

3               THE COURT:  Do you understand that, if you were found

4     guilty after a trial, you could appeal your conviction to a

5     higher court?

6               THE DEFENDANT:  Yes, Your Honor.

7               THE COURT:  And do you understand that, by entering a

8     plea of guilty, there will be no trial and you will have waived

9     or given up your right to a trial, as well as those other trial

10    protection rights which you and I have just talked about?

11              THE DEFENDANT:  Yes, Your Honor.

12              THE COURT:  Do you understand that at trial the

13    government would have to prove the essential elements of each

14    offense beyond a reasonable doubt?  And these elements for the

15    three offenses alleged that are identified in the plea

16    agreement are as follows.  With respect to Count One, the Hobbs

17    Act robbery count, the elements are as follows:

18         One, the defendant knowingly and willfully entered into a

19    conspiracy.  A conspiracy is an agreement or an understanding

20    of two or more people to accomplish by concerted action one or

21    more unlawful objectives.  The objective of the conspiracy as

22    charged in this case was the commission of a robbery.

23         The elements of the offense of Hobbs Act robbery under

24    federal law are as follows:

25         One, the defendant or another member of the conspiracy

1    knowingly obtained or took the personal property of another or

2    from the presence of another; two, the defendant or another

3    member of the conspiracy took this property against the

4    victim's will by actual or threatened force, violence, or fear

5    of injury, whether immediately or in the future; and, three, as

6    a result of these actions, interstate commerce or an item

7    moving in interstate commerce was delayed, obstructed, or

8    affected in any way or degree.

9        That's the first count, the Hobbs Act robbery count.  Then

10   we have two firearms charges.

11       Count Four is the charge of possession of a firearm

12   following conviction of a misdemeanor, a misdemeanor offense of

13   domestic violence.  The elements are, one, the defendant

14   knowingly possessed, received, shipped, or transported a

15   firearm or firearms; two, the possession, receipt, shipment, or

16   transportation of the firearm was in or affecting interstate

17   commerce; three, at the time of possession, receipt, shipment,

18   or transportation of the firearm, the defendant was previously

19   convicted of a misdemeanor crime of domestic violence; four, at

20   the time of possession, receipt, shipment, or transportation of

21   the firearm, the defendant knew that he had been previously

22   convicted of a misdemeanor crime of domestic violence.

23       Count Five is a charge of possession of a firearm while

24   knowingly being an unlawful user of controlled substances,

25   similar elements in most respects:

1          One, the defendant knowingly possessed, received, shipped,

2     or transported a firearm or firearms; two, the possession,

3     receipt, shipment, or transportation of the firearm was in or

4     affecting interstate commerce; three, at the time of

5     possession, receipt, shipment, or transportation of the

6     firearm, the defendant was an addict or unlawful user of

7     controlled substances under federal law; four, at the time of

8     possession, receipt, shipment, or transportation of the

9     firearm, the defendant knew that he was an addict or unlawful

10    user of controlled substances.

11         Those would be the legal elements of the three charges,

12    and I'll turn to Mr. Drescher and ask for a summary of the

13    facts he'd be prepared to prove at trial.

14         ATTORNEY DRESCHER:  Your Honor, were this case to go

15    to trial, the evidence would show that, on or about January 8th

16    of 2019, the defendant, Mr. Sweet, pleaded guilty in Case

17    Number 1515-11-18 Frcr in the Criminal Division of Franklin

18    Superior Court to an information charging him with recklessly

19    causing bodily injury to a family or household member, in that

20    case, his former girlfriend, in violation of Vermont's domestic

21    assault statute.

22         Evidence would also show that, as of December 2021, Jesse

23    Sweet was aware he had incurred this misdemeanor crime of

24    domestic violence and, as a result, he could not lawfully

25    possess a firearm under federal law.  Also, as of December

1    2021, Jesse Sweet knew that he was addicted to and was a

2    regular unlawful user of cocaine base, also known as crack

3    cocaine, which was a Schedule II controlled substance.

4         The evidence would also show that, within Vermont in or

5    around December 2021, Jesse Sweet acquired a Ruger Precision

6    Model 18004, .308 caliber bolt-action rifle bearing serial

7    Number 1801-13150, which had been manufactured outside the

8    state of Vermont and, therefore, had traveled in interstate

9    commerce.

10        With regard to Count One, as noted above, in 2021 and

11   until his arrest in February of 2022, Mr. Sweet was addicted to

12   and regularly used crack cocaine.  His primary source for crack

13   cocaine was Eric Raymond and Misti Morin, both of whom sold

14   crack in Swanton, Vermont.  To support his own habit, Mr. Sweet

15   would acquire crack cocaine from Raymond and Morin, sell some,

16   and use the rest.

17        At some point in or around January of 2022, Elijah Oliver

18   began selling crack cocaine from the residence located at 45

19   1st Street in Swanton, Vermont.  Oliver's crack sales ate into

20   the crack sales of Morin, Raymond, and Mr. Sweet.  To rectify

21   this situation, Mr. Sweet came up with a plan to rob Elijah

22   Oliver of his drugs and money at gunpoint.  Several witnesses

23   would testify they were aware of Mr. Sweet's plan to try and

24   rob Oliver.  Mr. Sweet spoke to Eric Raymond about his idea to

25   rob Elijah Oliver, and Mr. Raymond agreed to participate in the

1    attempted armed robbery.

2         Eventually, however, Mr. Sweet decided he would not

3    actually conduct the robbery.  Instead, Eric Raymond and others

4    would attempt the armed robbery, which occurred around 4:30 in

5    the morning on February 2 of 2022.  On that occasion, Mr. Sweet

6    was aware that the robbery attempt was about to occur and, in

7    order to contribute to its success prior to the attempted

8    robbery, Mr. Sweet disabled a video surveillance system at 45

9    1st Street in order to make it harder for those conducting the

10   robbery to be discovered.

11        THE COURT:  Thank you.  Mr. Sweet, has the government

12   accurately described the three offenses and your role in them?

13        THE DEFENDANT:  Yes, Your Honor.

14        THE COURT:  Do you disagree with any portion of the

15   prosecution's description of your conduct?

16        THE DEFENDANT:  No, Your Honor.

17        THE COURT:  Do you intend to plead guilty to each of

18   these three charges because you are, in fact, guilty of the

19   charges?

20        THE DEFENDANT:  I do, Your Honor.

21        THE COURT:  How do you plead to Count One, the Hobbs

22   Act robbery conspiracy charge, guilty or not guilty?

23        THE DEFENDANT:  Guilty, Your Honor.

24        THE COURT:  And Count Four, possession of a firearm

25   following conviction of a domestic violence misdemeanor?

1            THE DEFENDANT:  Guilty, Your Honor.

2            THE COURT:  And Count Five, possession of a firearm

3    while knowingly being an unlawful user of controlled

4    substances?

5            THE DEFENDANT:  Guilty, Your Honor.

6            THE COURT:  It is the finding of the court in the

7    case of the United States versus Jesse Sweet that the defendant

8    is fully competent and capable of entering an informed plea,

9    that he's aware of the nature of the charges and the

10   consequences of the plea and the plea of guilty to each count

11   is a knowing and voluntary plea supported by an independent

12   basis in fact containing each of the essential elements of the

13   relevant offense.  The plea to each of the three counts is

14   therefore accepted, and the defendant is adjudged guilty of

15   those three offenses.

16       And we'll move to a talk about sentencing for a minute.

17   I'll set a sentencing date.  Between now and then, a

18   presentence report will be prepared by the probation office to

19   assist the judge in sentencing.  You'll be asked to give

20   information for the report.  Your attorney may be present for

21   any interview with the probation officer if you wish.  The

22   court will permit you and Mr. Barth to read the presentence

23   report, file any objections to the report before the hearing.

24   At the hearing, you and your attorney will both have an

25   opportunity to speak on your behalf.

1          I'll refer to the case to the probation office for a

2     presentence investigation and report, and we'll set a

3     sentencing date.

4               COURTROOM DEPUTY:  Sentencing will be Friday, June

5     16th at 1:30 in Burlington.

6               THE COURT:  Mr. Barth, any objection to Mr. Sweet's

7     continued detention pending sentencing at this point?

8               ATTORNEY BARTH:  No, Your Honor.

9               THE COURT:  Anything more, Mr. Drescher, from your

10    side?

11              ATTORNEY DRESCHER:  Not at this time.

12              THE COURT:  Mr. Barth?

13              ATTORNEY BARTH:  No, thank you, Your Honor.

14              THE COURT:  Appreciate the help, both of you, okay?

15    Thank you.  Thank you, Mr. Sweet.  I'll look for you at the

16    time of sentencing, okay?

17              THE DEFENDANT:  Thank you, Your Honor.

18              THE COURT:  Thanks.

19

20

21          (Whereupon at 11:57 a.m. the hearing was adjourned.)

22

23

24

25

```
1                    C E R T I F I C A T E

2            I, Sunnie Donath, RMR, Official Court Reporter

3    for the United States District Court, District of Vermont, do

4    hereby certify that the foregoing pages are a true and accurate

5    transcription of my stenographic notes of the hearing taken

6    before me in the above-titled matter on February 17, 2023 to

7    the best of my skill and ability.

8            I further certify that I am not related to any of the

9    parties thereto or their counsel, and I am in no way interested

10   in the outcome of said cause.

11

12

13

14

15                        Sunnie Donath, RMR

16           ---------------------------------

17                    Sunnie Donath, RMR

18

19

20

21

22

23

24

25
```